CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2017 AUG 29 PM 4: 16

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MURTAZA ALI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:16-CV-037-BL |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

This case was reassigned to the United States Magistrate Judge under Second Amended
Special Order No. 3-301. Although Plaintiff was informed of the right to consent to the disposition
of this case by a magistrate judge under 28 U.S.C. § 636(c), he has chosen to not consent, and
therefore the undersigned magistrate judge enters this report and recommendation under the authority
of 28 U.S.C. 636(b). Based on the relevant filings and applicable law, as to the bulk of the claims
stated in the amended complaint, they should be **DISMISSED** with prejudice; and as to two
remaining claims, the Court should allow service of process to issue, for the reasons stated in the
balance of this report and recommendation. After entry of this report and recommendation, the case
should be reassigned to Senior United States District Judge Sam R. Cummings.

## I. BACKGROUND/PLEADING

This case, brought by then Immigration and Customs Enforcement (ICE) detainee Murtaza
Ali,[1] *pro se*, is subject to review under 28 U.S.C. § 1915(e)(2)(B) as Plaintiff proceeds *in forma
pauperis*. Plaintiff initiated this case with a handwritten civil complaint filed in the Dallas Division

---

[1] Although Plaintiff was housed at the Rolling Plains Detention Center when suit was filed, he has
now provided a street address of record in El Paso, Texas. (Doc. 34.)

of this the Northern District of Texas, but the case was then transferred to this the Abilene division. (Doc. 6.) The Court, in response to Plaintiff's inquiry about the completion of an amended complaint, directed Plaintiff to file an amended complaint on the Court's civil-rights complaint form. (Doc. 16.) The Court granted Plaintiff's motion for leave to file the form complaint with attachments, along with several voluminous exhibits. (Doc. 23.) That pleading with attachments (doc. 20) is now the leading subject to review under § 1915(e).[2]

In the amended complaint, Murtaza Ali names as defendants Jeh Charles Johnson, Secretary (former) of Department of Homeland Security; Phillip T. Miller, Assistant Director, Immigration and Customs Enforcement (ICE); Dusty Rowden, Deportation Officer, Immigration and Customs Enforcement; FNU Ashley, Detention Officer, Rolling Plains Regional Jail and Detention Center (RPRJDC); Marcello Villegas, Warden, RPRJDC; and FNU Hernandez, Chief of Security, RPRJDC. (Doc. 20, at 3, 8-10.) Plaintiff asserts claims for violation of his constitutional rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389-98 (1971), and he also claims that he seeks relief under the Administrative Procedures Act (APA) and under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq*. (Doc. 20, at 11.) Plaintiff claims that he and other ICE detainees similarly situated where subjected to unconstitutional conditions of confinement at the Tulsa County Jail in Oklahoma before he was transported to the RPRJDC on December 8, 2015. *Id.*, at 12. Plaintiff alleges that at RPRJDC his First Amendment right to access to courts was violated, and upon his complaints, he was retaliated against, including

---

[2]An amended complaint entirely supersedes and takes the place of an original pleading, rendering the original complaint of no legal effect. *See Clark v. Tarrant County*, 798 F.2d 736, 740 (5th Cir. 1986); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985). Thus, this Court considers only the May 5, 2016 amended complaint with attachments in conducting the judicial screening.

a temporary transfer to another facility (the Johnson County Law Enforcement Center) for approximately 10 days before he was then returned to RPRJDC. *Id.* at 12. Plaintiff also incorporates several other claims. Plaintiff seeks judgment against the defendants in both an individual and official capacity, and he seeks a declaratory judgment that his rights were violated, issuance of an injunction against defendants Johnson, Miller and Rowden, nominal damages, and compensatory and punitive damages against all defendants. *Id.* at 35.

## II. PRELIMINARY SCREENING UNDER 28 U.S.C. § 1915(e)(2)(B)

Plaintiff is an inmate who has been permitted to proceed *in forma pauperis*. Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## III. ANALYSIS

### A. No Claim for Declaratory or Injunctive Relief

As noted, Plaintiff Ali has informed the Court that he is no longer housed in the RPRJDC, and appears to no longer be detained by ICE. A claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the prisoner's release. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x. 279, 282 (5th Cir. 2008)(citing *Herman v. Holiday,* 238 F.3d 660, 665 (5th Cir. 2001). Furthermore, the possibility of return and future detention in the same facility is too speculative to warrant relief. *Id.* Because plaintiff Ali is no longer incarcerated at the RPRJDC, his claims for injunctive and declaratory relief should be dismissed.

### B. No Liability as to Claims Against Defendants in an Official Capacity

In the amended complaint, Plaintiff seeks recovery under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389-98 (1971). In the *Bivens* case, the Supreme Court recognized an individual's right to seek recovery for violation of constitutional rights by a person acting under color of federal law. 403 U.S. at 297. *Bivens* is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10(5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials"),*overruled on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003).

But the *Bivens* decision only provides a remedy for victims of constitutional violations by government officers in their individual capacities. A *Bivens* action does not provide for a cause of action against the United States. *See Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d

4

282, 286 (5th Cir. 1999). Nor may a *Bivens* action be brought against a federal agency, such as ICE. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). Claims against federal employees in their official capacities based on alleged constitutional violations are also barred under *Bivens* because they are the equivalent to claims against the federal agencies who employ the employees. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). This is because the purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Because a *Bivens* action cannot be brought against a federal agency or individual employees in their official capacities, Plaintiff has not alleged a viable *Bivens* claim against the federal ICE employed defendants in an official capacity.

In addition to his claims against individual ICE employees, Plaintiff has also named three defendants he identifies as employed at the RPRJDC by a private corporation named Emerald Corrections Management. (Doc. 20, at 9.) Thus, though Ali was detained to ICE, he complains of events that took place in a private prison and asserts claims against individual employees of a private prison. Unlike § 1983 claims, there is not a common law "state action" equivalent for claims brought pursuant to *Bivens*. In fact, the United States Supreme Court has repeatedly refused to extend liability under *Bivens* except in limited situations as recently reaffirmed in *Ziglar v. Abbasi, et al.,* 137 S. Ct. 1843, 1861-64 (2017) (holding that *Bivens* should not be extended to claims challenging detention policy in the aftermath of the September 11 attacks and analyzing other situations where the Court has refused to extend *Bivens*). And, the Supreme Court has expressly declined to extend *Bivens* liability to private corporations. *See Malesko,* 534 U.S. at 67-74 (2001) (holding that a *Bivens* claim is not available against a private corporation operating under a contract with the federal

5

government). Thus, as Plaintiff Ali does not have a *Bivens* remedy against a private corporation, his claims against the three individual defendants employed by a private corporation in an "official capacity" also must be dismissed. *See Campbell v. Martinez,* No.4:03-CV-299-Y, 2003 WL 22410576, at * 2 n. 7 (N.D. Tex. May 14, 2003) (finding that as defendant physician was not a federal government employee, "[b]ecause *Bivens* claims do not lie against private corporations under contract with the federal government, to the extent [Plaintiff's] official-capacity claim against [the physician] is a claim against a private entity, it must be dismissed") (citing *Malesko*, 534 U.S. at 61).)

In sum, all Plaintiff's claims against any of the defendants in an official-capacity should be dismissed by the Court.

## C.    Limitation on Claims Against Individual Employees of Private Corporation

Furthermore, the Supreme Court has also refused to extend *Bivens* liability to allow federal prisoners to sue the employees of a private prison. *See Minneci v. Pollard,* 565 U.S. 118, 125-130 (2012). In that case, a federal prisoner confined at a private prison sought to assert an Eighth Amendment claim of deliberate indifference to his serious medical needs against individual employees of the prison. *Id.* at 125. The Court held that where a federal prisoner seeks damages from an individual employed at a privately operated federal prison for alleged conduct that falls within the scope of traditional state tort law, the prisoner must seek a remedy under state law. *Id.,* at 123-131; *see also United States v. Fears*, No.02-379-2 (JDR), 2014 WL 4669592, at * 1 (D.C. Sep. 19, 2014) (noting that private prisons and their employees - - unlike officers at prisons run by the BOP - - are generally not proper defendants for *Bivens* actions alleging constitutional violations) (citations to *Malesko* and *Minneci* omitted); *see also Villasenor v. GEO Group, Inc.,* No. 14-CV-

92164-BNB, 2014 WL 5293444, at *2 (D. Co. Oct. 16, 2014) (citing *Minneci* to hold that as Plaintiff's claims for lack of medical care could also be brought under state tort law, his claims against individual GEO [private company] prison employee was precluded). Because the Supreme Court found that the tort law of the state in which the prisoner was incarcerated provided the prisoner adequate remedies to protect his constitutional interests, the Court found that *Bivens* did not provide Plaintiff with a federal remedy against the employees of the privately run federal prison where the prisoner's constitutional rights had been violated. *Minneci,* 565 U.S. at 126-131. Importantly, the Court "found specific authority indicating that state law imposes general tort duties of reasonable care . . . on prison employees in every one of the eight States [including Texas] where privately managed secure federal facilities are currently located." *Id.* at 128. Because defendants Villegas, Ashley, and Hernandez are employees of Emerald Corrections Management, a private corporation, no *Bivens* action is available against these employees of a private corporation if Texas provides an adequate remedy for these claims. *See Grant v. Lacie,* No. H-15-1849, 2015 WL 4769753, at *2 (S.D. Tex. Aug. 12, 2015) (citing *Minneci*, 132 S.Ct. at 626 ).

Thus, the focus as to review of the claims against these private individual defendants is whether the alleged conduct supporting the constitutional violation is of the sort that typically falls within the scope of traditional tort law. Of course, this is the case in Eighth Amendment conditions-of-confinement type cases. *See Cervantes v. Dixon,* No.5:13-CV-205-C, 2014 WL 5285699, at *2 (N.D. Tex. Oct. 15, 2014) (applying *Minneci* to hold that *Bivens* does not authorize action for damages on inmate's claims that he was denied medical care in privately run facility); *see also Naranjo v. Thompson, et al.,* NO. PE:11-CV-0105-RAJ, 2014 WL 12648495, at *4 (W.D. Tex. Jan, 2, 2014) (collecting cases in the Fifth Circuit and its district courts) , *rep. and rec. adopted,* 2104 WL

12648519 (W.D. Tex. Jan. 31, 2014). Among the many claims Plaintiff asserts against the private employee defendants in this case is the claim that the water supply in the RPRJDC was contaminated. (Doc. 20, at 17-18.) He also claims that items of property sent to him by his family were not actually released to him but were instead returned to his family. (Doc. 20, at 29-30.) And, Plaintiff also alleges that defendant Villegas failed to respond to his complaints that his Kosher diet was deficient in calorie count. (Doc. 20, at 31-32.)

But courts have found that similar claims brought by an inmate against a private prison employee are barred from review by the logic of *Minneci. See Srader v. Richardson,* No.10-3209-SAC, D. Kan. March 31, 2014) (noting that since plaintiff had adequate remedies under Kansas tort law for recovery of damages for loss of property, *Bivens* claims for damages barred by *Minneci*) (citations omitted); *see also Karbou v. Clark,* No.C12-5045 BHS/KLS, 2013 WL 1283801, at * 7 (ICE detainee's claims arising from his detention in a privately run facility that he was denied certain conditions including exercise equipment is kind of claim that must be dismissed under *Minneci*) ; *Murray v. Corrections Corp. of America, et* al., No. CV 11-2210-PHX-RCB (JFM), 2012 WL 2799759 (D. Ariz. July 9, 2012) (holding that inmate's claim that CCA employees denied him an adequate religious diet were within the scope of traditional tort claims like those alleged in *Minneci*). Under this authority, the Court should find that all of Plaintiff's claims against the individual defendants employed by private company Emerald Correction Management arising from these tort like claims, should be dismissed.

The Supreme Court in *Minneci* also recognized that there may be situations in which state tort remedies are inadequate to vindicate the rights of persons held in privately run federal correctional facilities. *See Minneci,* 565 U.S. at 130. Many courts that have analyzed this issue have

determined that an inmate's claims against an individual employee at a private prison under the First and Fifth Amendments Amendment may not be barred from review. *See Young v. Tyron,* No.12-CV-6251CJS, 2015 WL 309431 at *9, (W.D. N.Y. Jan. 23, 2015) ("It is not clear that [the First and Fifth Amendment] claims, by contrast to the conditions of confinement claims, allege conduct 'of a kind that typically falls within the scope of traditional state tort law'") (citing *Minneci,* 132 S. Ct. at 626); *see also Espinoza v. Zenk,* No. 10-CV-427 (MKB), 2013 WL 1232208, at *9-10 (E.D.N.Y. March 27, 2013); *Janali v. Correction Corp. Of America, et al.,* No.5:11CV119-KS-MTP, 2013 WL 6536373, at *6 n.8 (S.D. Miss. Dec. 13, 2013) ("It is not clear that the First Amendment claims asserted by Plaintiff are of the type that fall within the scope of traditional tort law; therefore, the undersigned will consider Plaintiff's claims on the merits"). Applying the logic of these cases to the instant case, the Court determines that Ali's claims against the private company defendants for denial of access to court, retaliation, and interference with his First Amendment religious rights are not barred from review by *Minneci.*[3]

**D.     Failure to State a Claim Upon Which Relief May be Granted**

As noted, Plaintiff seeks recovery in this case for violation of his constitutional rights under *Bivens,* 403 U.S. 388 (1971). In order to assert a claim for damages for violation of federal constitutional rights under *Bivens,* a plaintiff must set forth facts in support of both of its elements: (1) the deprivation of a right secured by the Constitution or laws of the United States (2) by a person acting under color of law. *See West v. Atkins,* 487 U.S. 42, 48 (1988)(elements of § 1983 action); *Evans,* 168 F.3d at 863 n. 10. The remainder of this analysis focuses on whether Plaintiff has

---

[3]Some of these claims should still be dismissed for failure to state a claim upon which relief may be granted, and others should be allowed to be served, for the reasons set forth *infra.*

sufficiently pleaded facts that show a violation of his constitutional rights against the listed defendants, and also considers the general viability of particular constitutional and statutory based claims.

I.    No Viable Claim for Denial of Inadequate Law Library/Access to Court

In several portions of the amended complaint, Plaintiff Ali complains of the inadequacy of the law library at RPRJDC, including the failure to have sufficient federal materials, the failure to provide adequate assistance by a law library supervisor, failure to have access to means of electronic law research, failure to allow access to a printer to print documents, failure to provide all pages of copies of requested cases, and failure to provide Plaintiff sufficient or extra law library time. (Doc. 20, at 15-17, 18-19, 20-21.) Ali asserts allegations arising from these claims against defendants Villegas, Ashley, and Rowden. *Id.*

The Supreme Court, in *Bounds v. Smith,* 430 U.S. 817, 828 (1977), recognized a fundamental constitutional right of access to the courts. *Id.; see generally Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir. 1993) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses") (quoting *Chrissy F. v. Mississippi Dept. Of Public Welfare,* 925 F.2d 844, 851 (5th Cir. 1991)). The Court later clarified the scope of a prisoner's right of access to the courts and found that a prisoner must allege an actual injury to support a claim for a violation of such right:

> Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense . . . [t]he inmate therefore must go one step further and demonstrate that the

alleged shortcomings in the library or legal assistance program hindered his efforts
to pursue a legal claim.

*Lewis v. Casey,* 518 U.S. 343, 351 (1996).

Thus, in order to state a claim of a right to relief on the alleged facts, Plaintiff Ali must set

forth that the complained-of action hindered his efforts to pursue a legal claim. *See Chriceol v.*

*Phillips,* 169 F.3d 313, 317 (5th Cir. 1999) (inmate alleging denial of access to courts must

demonstrate actual injury) (citing *Ruiz v. United States,* 160 F.3d 273,275 (5th Cir. 1998)(holding

that without proof of actual injury a prisoner cannot prevail on an access-to-the-courts claim)); *see*

*also McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (noting that such a plaintiff must

show prejudice to his position as a litigant)(citations omitted). But Ali has not done this.

First, within his detailed factual recitations recited in several portions of the amended

complaint, Ali did not provide any facts of how any of the conduct taken by the defendants, or how

the alleged inadequacies in the law library or law library support, has caused him any particular

harm. He has not alleged that he was prevented from filing any document in court, or was otherwise

prejudiced in his efforts to pursue a legal claim. Furthermore, as to any allegations related to Ali's

ability to obtain access to legal material in support of his challenge to his detention by ICE, Plaintiff

Ali acknowledges that he has counsel Stephen Antwine assisting him. (Doc. 20, at 24.) A plaintiff

represented by counsel has no constitutional right of access to a law library. *See Caraballo v. Fed.*

*Bureau of Prisons,* 124 F. App'x. 284, 285 (5th Cir. 2005)(holding that because plaintiff had court-

appointed counsel, he had no constitutional right of access to the law library to help prepare his

defense, and therefore failed to state a claim upon which relief may be granted); *see also Degrate*

*v. Godwin,* 84 F.3d 768, 768-69 (5th Cir. 1996) (holding that an inmate who rejected court-appointed

counsel had no constitutional right to access a law library, and noting "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law")(citing *Bounds,* 430 U.S. at 838)(other citations omitted)). Thus, as Ali has not alleged any harm by setting forth facts that he was prevented from seeking relief in court, his claims regarding the adequacy of the law library or his ability to obtain access to courts, fails to state a claim upon which relief may be granted.

II.     No Claim under the Privacy Act

Plaintiff includes a claim that non-defendant officials have failed to respond to his request to correct erroneous information in his ICE file regarding the crime for which he was indicted. Although Ali recites conduct of non-defendant Joshua Johnson, he also claims that defendant Rowden conveyed that Ali was not entitled to a response from the agency regarding the correction to his file. (Doc. 20, at 15-16, ¶¶ 17,20, 22.) Plaintiff recites in one portion of the amended complaint that he seeks relief under the "Administrative Procedures Act (APA) 5 U.S.C. § 702", but in the portion detailing the particular alleged facts alleging that officials with ICE fail to maintain accurate records in his file, he lists the claims as arising under "The Federal Privacy Act 5 U.S.C. § 552." (Doc. 20, at 11; at 15.)  Ali cites to 5 U.S.C. § 552a(e)(5) and alleges that this law "requires federal executive agencies to maintain records used in making determinations about individuals 'with such accuracy . . . as is reasonably necessary to assure fairness to the individual in the determination'" *Id.* at 15, ¶ 20.  Plaintiff alleges that Rowden, in response to his letter requesting that the information be corrected, told him to stop sending such requests.  Ali alleges this was in violation of his First and

Fifth Amendment rights. *Id.* at 16, ¶ 22.

It appears that Plaintiff seeks relief under the Privacy Act, 5 U.S.C. § 552a, rather than the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*. The Privacy Act requires federal agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5) (West 2007). An individual may bring suit against a federal agency for violation of the Privacy Act when it fails to comply with section 552a(e)(5), or any other provision of section 552a, and the failure has an adverse effect on the individual. *See* 5 U.S.C. § 552a(g)(1) (West 2007). The Privacy Act, however, permits agencies such as the Department of Homeland Security(DHS)/Immigration and Customs Enforcement (ICE) to enact rules to exempt any system of records within the agency from certain provisions of the Act, including section 552a(e)(5). *See* 5 U.S.C. § 552a(j) (West 2007).

Pursuant to section 552a(j), the DHS has exempted various systems of its electronic and paper records from certain provisions of the Privacy Act under which the Plaintiff appears to be seeking relief, including sections 552a(e)(5), and 552a(d). *See DHS System of Records Exempt from the Privacy Act,* 6 C. F. R. Part 5, Appendix C, §§ 1 (Freedom of Information Act and Privacy Act Records System), 2 (Civil Rights and Civil Liberties Records System), 5 (Investigative Records System), 11 (General Counsel Electronic Management System including records of Immigration and Customs Enforcement), 28 (Law Enforcement Support Center (LESC) Alien Criminal Response Information Management (ACRIM), 29 (Search, Arrest, and Seizure System of Records) 30 (External Investigations Systems of Records), and 35 (Criminal Investigation Information System).

Plaintiff seeks relief from ICE defendant Rowden under the Privacy Act on the basis that his

central file contains inaccurate information, that Rowden and ICE failed and/or refused to correct

the inaccurate information from the Plaintiff's central file, and that such inaccurate information was

used or will be used against him. As can be seen, however, the DHS/ICE records systems, containing

the records at issue, are exempted from the provisions of the Privacy Act under which Plaintiff seeks

relief. Thus, Plaintiff Ali is not entitled to relief under the Privacy Act. *See generally McClellan v.*

*Bureau of Prisons*, No. 5:05cv194DCB-JCS, 2006 WL 2711631, at *5 (S.D. Miss. August 2, 2006)

(in similar context of an inmate's records of the Bureau of Prisons (BOP), stating that the

exemptions set forth in 28 C.F.R. § 16.97 exempt the BOP's Central Inmate Record System from

subsection (e)(5) of the Privacy Act; therefore the exemption "proscribes plaintiff's suit against the

BOP for either injunctive or monetary relief"), *rep. and rec. adopted,* (S.D. Miss. September 19,

2006).

Furthermore, as Plaintiff Ali is not entitled to access the information in his file under the

DHS/ICE exemption to the Privacy Act, the failure of Rowden to provide him such information, or

to respond to a request to correct an alleged inaccuracy, cannot arise to be a violation of Ali's

constitutional rights under the First or Fifth Amendments to the Constitution. The Court should

dismiss Ali's claims arising from the alleged inaccuracy of information in his file for failure to state

a claim upon which relief may be granted.

III.    No Claim Asserted on Behalf of Another Detainee

In some portions of the amended complaint, Plaintiff refers to actions taken against another

detainee Ivan Vetcher. (Doc. 20, at 19-20, 23, 33-34.) Although 28 U.S.C. § 1654 authorizes a

14

litigant to proceed in federal court as his or her own counsel, individuals who do not hold a law license may not represent other parties even on a next-friend basis. *See Martin v. City of Alexandria*, 198 F. App'x. 344, 346 (5th Cir. 2006) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause")); *see also Weber v. Garza,* 570 F.2d 511, 514 (5th Cir. 1978)("[I]ndividuals not licensed to practice law by the state many not use the 'next friend' device as an artifice for the unauthorized practice of law.") Thus, Plaintiff Ali is not authorized to represent and assert claims on behalf of Ivan Vetcher, and any such claims should be dismissed by the Court.

IV.    No Claim Based Solely Upon Verbal Assault

Plaintiff claims that a non-defendant Officer Phoebus stated to him "What if I say, I will cut your beard off?" as an expression of disrespect and religious discrimination. (Doc. 20., at 30.) After an additional verbal altercation in which Plaintiff complained to the officer of the discriminatory nature of the remarks, Plaintiff alleges the officer then said, "I don't care what the Supreme Court says . . . you can't stop me from talking." *Id.* So Plaintiff then complained to defendants Hernandez and Villegas, and complains that they did not reprimand or properly respond to Officer Pheobus's comments. *Id.* at 31. Verbal harassment, without more, does not amount to a constitutional violation. *Bender v. Brumley,* 1 F.3d 271, 274 n.4 (5th Cir. 1993). "Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (citation omitted); *see generally Freeman v. Arpaio,* 125 F.3d 732, 738 (9th Cir. 1997) (abusive language directed at prisoner's religious and ethnic background was insufficient to state a constitutional violation), *overruled in part on other grounds, Shakur v. Schiro,*

514 F.3d 878, 884085 (9th Cir. 2008); *Nevares v. Sabin*, No.1:08-CV-169-BL, 2009 WL 1262866, at *10 (N.D. Tex. May 7, 2009) (claim that officers called inmate a "racist" and a "snitch" without more is not a constitutional violation); *Orange v. Ellis, et al.*, No. 08-224-JVP-DLD, 2009 WL 454253, at *3 (M.D. La. Feb. 23, 2009) (claim that defendant called Plaintiff "bitch", "rat", and a "snitch" not sufficient to state a violation). Plaintiff does not accompany his claim that he was subjected to a discriminatory remark about his religion with any other facts that he suffered any harm as a result. As the mere verbal religious remark by the officer in and of itself does not state a constitutional violation, Plaintiff cannot support a claim against defendants Villegas and Hernandez for failing to take any action against the officer. The Court should find that such claim should be dismissed.

V.     Not Sufficient Personal Involvement as to Defendants Johnson and Miller

Although Ali has named DHS Director Jeh Johnson and ICE Field Operations Director Phillip Miller as individual defendants, he has recited no facts to relate any personal actions of Johnson or Miller to the extensive allegations made the basis of his complaint. In order to state a *Bivens* claim, the claimant must allege personal involvement of a defendant. *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir.2004). Federal officials cannot be held vicariously liable for the acts of subordinates under the doctrine of respondeat superior. *Cronn v. Buffington*, 150 F.3d 538, 544 (1998) (citing *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993)). Without personal involvement or participation in an alleged constitutional violation, the individual should be dismissed as a defendant. *Cronn*, 150 F.3d at 544 (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

Throughout the amended complaint, Ali provides recitation of events that took place almost daily after his release from the Bureau of Prisons where he was immediately detained on November 10, 2015, his then weeks of detention in the Tulsa County Jail, his subsequent detention at the RPRJDC, his brief detention at the Johnson County Jail, and his return placement at the RPRJDC. (Doc. 20, at 12-26.) But Plaintiff never recites that defendants Johnson or Miller were present at any of these locations, nor does he allege that either of these defendants directly engaged with him on any of these claims. Plaintiff repeatedly recites language such as listed below to state his claims against these two defendants:

(Detention in Tulsa County Jail)
Defendant Johnson and Miller's approval of policies causing their subordinates in failing to act in an official capacity of under color of law or legal authority. (Doc. 20, at 14.)

(Conditions at RPRJDC)
Defendant Johnson and Miller and subordinates agents personal policy, tradition or custom to cover up civil rights violations of ICE detainees occurring under their supervision and control and thus showing acquiesce towards violations and notice; subjecting plaintiff and all similarly situated ICE detainees to conditions of confinement that are "punitive" for the sake of sending a message of deterrence to those detained (challenging detention) and other foreign individuals who may be considering immigration. Defendants Johnson and Miller approval of such practices by their subordinates, failed to act in an official capacity or under color of legal authority. *Id. at 14.*

(Law Library Access at RPRJDC)
The complaint letter also articulated DHS/ICE policy and practice approved by defendant Johnson and Miller, to show willful blind eye and approval or inadequate and deficient law libraries in apposite to U.S Supreme Courts standards for "adequate law libraries" at its detention centers "making it impossible for the detainee/litigant to defend 'themselves] in criminal, civil, and administrative proceedings . . . ICE detainees challenging criminal, civil, and administrative proceedings do not have access to electronic databases such as Westlaw, and Internet Search Engines; which the opposing litigants i.e. DHS - government attorneys and courts rely on: in some

cases that information is only available on electronic databases, which further puts *pro se* detainees/litigants at an even greater disadvantage." Defendant Johnson and Miller approved a policy showing willful blind eye to inadequate law libraries, causing ALI and all similarly situated detainees a fundamental Right to Access to Courts. *Id.* at 18.

(Retaliatory Transfer)

All conditions subjected to Ali and all similarly situated ICE detainees by defendant Johnson and Miller's approved and implementing policies which authorized defendant Rowden to cause "retaliatory" transfer under guise of discretion, causing "wanton infliction of pain and suffering" in direct contravention to clearly established laws, and in violation of detainees' constitutional rights. *Id.* at 22-23.

(Johnson County Conditions/Equal Protection)

Defendant Johnson and Miller have approved policy denying male ICE detainees "equal protection" in comparison to female ICE detainees who are not subject to physical restraints causing pain, discomfort and suffering during transports. *Id.* at 26.

(Limitation on Friday prayers at RPRJDC)

It is evident that policy approved by defendant Johnson and Miller implemented by RPRJDC staff violates detainee's rights under Religious Freedom Restoration Act (RFRA) 42 U.S.C. § 2000bb and First Amendment to "fee exercise"; by directing practitioners of a religion (Islam) how to practice their religion, defendants being "an arbiter in religious orthodoxy." *Id.* at 27.

A review of these allegations shows that Ali has named Johnson and Miller each in a supervisory capacity, and seeks to hold them liable only upon a theory that they were responsible for the actions of their subordinates, or that they implemented policies that related to the underlying factual allegations. But as seen above, these allegations are conclusory and devoid of any factual specifics. Thus, Ali has not stated a viable individual liability claim under *Bivens* against either Johnson or Miller, and any such claims against these defendants should be dismissed by the Court

for failure to state a claim upon which relief may be granted.[4] As noted, above, Plaintiff includes in the amended complaint factual allegations of events and conditions in the Tulsa County Jail, and factual allegations about the conditions of his confinement at the Johnson County Law Enforcement Center. (Doc. 20, at 13-14 (Tulsa County); at 22, 23-25 (Johnson County).) Plaintiff has named no other defendants on these claims other than Johnson and Miller, such that this recommended dismissal is inclusive of all claims arising from Plaintiff's November-December 2015 detention in those two facilities.

VI.     Limitation Upon Claims for Compensatory Damages under 42 U.S.C. § 1997e(e)

As noted above, as a part of his request for relief from this Court, Ali seeks compensatory monetary damages. (Doc. 20, at 35.) As a part of the PLRA, Congress placed a restriction on a prisoner's ability to recover compensatory damages without a showing of physical injury: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e)(West 2012). This physical injury requirement has long been recognized as applying to claims under the Eighth Amendment. *See Herman v. Holiday*, 238 F.3d

---

[4]Allegations of inadequate processing of a grievance do not support a constitutional violation. As the Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers*:"[ An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As this claim relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation")(citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Thus, to the extent Ali's alleges that either Johnson or Miller failed to respond properly to any grievance amounts is an effort to assert an unspecified due process claim, as any such allegation does not state a due process violation, any additional claims against Miller and Johnson related to a response to and processing of any claim/grievance should also be dismissed.

660, 665-66 (5th Cir. 2001); *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir. 1999); *Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit then held that § 1997e(e) applied to claims under the First Amendment as well, noting "it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers,* 404 F.3d 371, 375 (5th Cir. 2005). More recently, the Fifth Circuit rejected an inmate's claim that § 1997e(e) does not apply to a Fourth Amendment claim arising from a strip search, emphasizing that in *Geiger* the court noted that "1997e(e) applies to *all federal civil actions,*" and noting that "[r]egardless of [Plaintiff's] invocation of the Fourth Amendment, his failure to allege any physical injury preclude his recovery of any compensatory damages for emotional or mental injuries suffered." *Hutchins v. McDaniels,* 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original). Thus, even with regard to the claims the undersigned will recommend the Court serve upon the defendants, Plaintiff must show a physical injury to justify any award of compensatory damages for violation of his First Amendment rights.

With regard to the specific claims that may be allowed to be served upon some defendants (retaliation, First Amendment, RFRA) , courts have recognized that § 1997e(e) bars a Plaintiff from seeking monetary damages to compensate for emotional or mental injury, absent a showing of physical injury. (First Amendment and RFRA Religion Claim) *See Massengill v. Livingston,* 277 F. App'x 491, 492 (5th Cir. 2008) (affirming district court's dismissal of claims by Texas prisoner that he was denied the right to freely practice his religion under the Free Exercise Clause of the First Amendment and under the Religious Land Use and Institutionalized Persons Act (RLUIPA) since

20

§ 1997e(e) bars claims for compensatory damages for a First Amendment violation without a prior showing of physical injury); (Retaliation) *See Logan v. Honeycutt*, No. 12-156-JJB-SCR, 2012 WL 3903501, at *3 (M.D. La. July 24, 2012) (holding that Plaintiff's failure to allege that he sustained a physical injury as a result of the alleged retaliation prohibits him from recovering compensatory damages pursuant to 42 U.S.C. § 1997e(e)); *Hodge v. Stadler, et al.*, No. 04-0965, 2006 WL 1560754, at *3 (E.D. La. May 24, 2006) ("Arguably, it may seem counterintuitive that a prisoner's damage claim for a purely nonphysical form of retaliation would be barred unless he can show a physical injury suffered in connection with the claim. Nevertheless, this Court finds that is in fact the result mandated by the decision of the United States Fifth Circuit Court of Appeals in *Geiger v. Jowers*, 404 F.3d 371 (2005)").

The only allegation of physical injury listed in Plaintiff's amended complaint is his allegation that while transported from RPRJDC to Johnson County he was subjected to "sleep deprivation, stomach aches, head aches, body aches, swollen wrists and ankles caused by restraints during punitive/atrocious transports." (Doc. 20, at 35.) He has not alleged a physical injury on his allegations of the deprivation of his First Amendment and RLUIPA claims that his free exercise of religion was violated. Thus, the Court should find that the only claim for which Plaintiff may seek compensatory damages is the retaliation claim.

## IV. SERVICE OF SOME CLAIMS

As noted above, Plaintiff failed to recite that he sustained any harm supporting his allegation of denial of access to court. Even so, Plaintiff recites that from January 21, 2016 through February 2, 2016, he was repeatedly engaged with defendants Rowden, Ashley, and Villegas concerning his claims that

he had insufficient access to legal materials. He also then alleges that his frequent letters, grievances, and requests to meet with these defendants resulted in him being abruptly transferred on February 2, 2016 at 5 a.m. from the RPRJDC to the Johnson County Law Enforcement Center, in retaliation for his exercise of his constitutional rights. (Doc. 20, at 18-23.) Ali alleges he was subjected to a 14-hour transfer in physical restraints, that resulted in physical injury. *Id.* at 22, 35. Plaintiff reports that only ten days after his assignment to the Johnson County Law Enforcement Center, on February 12, 2016, he was abruptly transferred back to RPRJDC "upon direction of defendant Rowden to cover-up the retaliation subjected towards Ali." *Id.* at 25. The Court should allow service of Plaintiff Ali's claims against Rowden, Ashley, and Villegas that these events subjected him to retaliation.

Plaintiff also recites events related to support claims that his right to exercise his religious beliefs were interfered with in violation of the First Amendment and in violation of the Religious Freedom Restoration Act (RFRA) 42 U.S.C. § 2000bb. (Doc. 20, at 27-29; ¶¶ 52-57, 66-69.) He asserts these claims directly against defendants Villegas and Rowden. The Court should also allow service of these claims.

## V. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that all Plaintiff's claims, except his claims that he was subjected to retaliation by Defendants Rowden, Ashley, and Villegas, and that he was subjected to religious discrimination by Defendants Rowden and Villegas, should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

It is further **RECOMMENDED** that the Court allow Plaintiff to obtain service of process as to his claims that he was subjected to retaliation by Defendants Rowden, Ashley, and Villegas, and that he

was subjected to religious discrimination by Defendants Rowden and Villegas.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

**SO ORDERED**.

Signed August 29, 2017.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

23